353 LEXINGTON AVENUE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65089. Promulgated February 20, 1933.

*Wilton H. Wallace, Esq.*, for the petitioner.
*J. A. Adams, Esq.*, for the respondent.

OPINION.

ARUNDELL: Upon audit of the consolidated return filed by petitioner and its subsidary, Lexington Improvement and Development Corporation, for 1929, the respondent disallowed a deduction for net loss claimed to have been sustained in 1928, disallowed a portion of a deduction for depreciation, and allowed a deduction, which apparently had not been claimed by petitioner in the return filed, for exhaustion of leasehold. These adjustments resulted in a deficiency of $327.49.

From the stipulated facts, which we adopt by reference as our findings of fact, it appears that in 1924 petitioner's subsidiary leased certain ground in New York City and erected thereon a building which was completed in January, 1926, and which has since been operated as an apartment hotel. The cost of procuring the lease was $27,000 and the cost of constructing the building was $469,630.73.

The original term of the lease is for the period from November 1, 1924, to November 1, 1945, a period of 21 years, and provides that upon the expiration of that term it will be renewed, if the lessee notifies the lessor of his desire to renew, for a further period of 21 years, and that upon the expiration of this second period the lessee may renew for two further periods of 21 years each. The possible total life of the lease, in the event the renewal privileges are exercised, is 84 years. The rentals for the renewal periods, in the event the parties do not agree upon the amount, are to be fixed at an amount equal to 5½ per cent of the " appraised value of the land without building."

For the year 1929 the respondent allowed a depreciation deduction for the building computed at the rate of 3 per cent of the cost thereof, and a deduction for exhaustion of the lease in an amount representing one eighty-fourth of the cost. Similar deductions allowed for the year 1928 resulted in the elimination of a net loss for that year, which was carried over as a deduction in computing net income for 1929. Petitioner now claims that deductions should be allowed for depreciation of the building and exhaustion of the leasehold at the rate of one twenty-first of the cost of each.

Petitioner's principal reliance is on the case of *Bonwit Teller & Co.* v. *Commissioner*, 53 Fed. (2d) 381, in which it was held that where the original term of a lease had 19 years to run from March 1, 1913, with an option to renew for 21 years at a renewal to be based on an appraisal of the property, the lessee taxpayer was entitled to exhaust the March 1, 1913, value of the lease over the remaining life of the original term of the lease. That decision is premised upon the statutory provision that exhaustion deductions are allowable in respect of " property used in the trade or business," and the fact that in that case " the property being used in the business (the leasehold) will be exhausted in nineteen years." In so holding the court did not disregard the existence of the option to renew, but proceeded on the theory that the option was not property then being used in the business, and that in the event of its exercise new property would be created which might then be the subject of exhaustion. Counsel for respondent attempts to distinguish the present case from the *Bonwit Teller* decision on the ground that the court had before it a question of exhausting only the March 1, 1913, value of the unexpired term of the original lease, whereas in this case the investment by the lessee in the building and the length of its useful life makes it evident that the lessee intended to renew, and consequently exhaustion should be spread over the period that the lessee is entitled to enjoy the use of the property. We think that this is not a valid distinction. A read-

ing of the court's opinion discloses that the renewal privilege was taken into consideration and it was held that the result would be the same whether or not the option entered into the value of the lease. The court said:

Such an option might readily enhance the value of the lease, but it could hardly be supposed to change the period during which the lease would become exhausted.

We should not lose sight of the fact that in both cases rentals were to be adjusted upon exercise of the option to renew, and it is far from certain that a rental based on land values a score of years in the future would make a renewal attractive to the lessee. In our opinion the *Bonwit Teller* case is controlling here and deductions for exhaustion of the lease should be confined to its original term.

Respondent points out that a situation might arise where the original term of a lease was a comparatively short period, say a year or two, with an option to renew for 21 years, and in such case a write-off over the original term would not be justified. Under such circumstances it seems to us very doubtful whether an exhaustion allowance confined to the original term would meet the statutory requirement of reasonableness. However, that is a question to be decided when the occasion arises.

As to the building erected by the lessee, we are of the opinion that the respondent's allowance must be sustained. The respondent has found that the building had a useful life of 33⅓ years and upon that finding has computed depreciation at the rate of 3 per cent a year. Petitioner did not dispute this and has offered no evidence to show that the respondent's determination in this respect is erroneous. Under these circumstances we are compelled to accept the determination as correct. There is no requirement in the statute that the cost of a leasehold and the cost of improvements placed by the lessee on the leased premises shall be exhaustible over the same period, even though it might simplify accounting if the useful life of the lease and the improvements were coextensive. Cf. *Eimer & Amend*, 2 B. T. A. 603. In the instant case the adjusted rental provided for, should the option of renewal be exercised and the lease extended, is by the terms of the lease to be based solely on a percentage of the value of the land without reference to the improvements. We believe that here the land and the improvements must be regarded as separate pieces of property and deductions allowed accordingly. If it so happens that the lessee does not renew the lease and finds that a portion of its capital investment is not fully exhausted through deductions allowed for depreciation, it will undoubtedly be entitled to a loss deduction to make up the difference.

According to the deficiency notice the net loss claimed in 1928 and disallowed by respondent as a deduction for 1929 arises from adjustments in claimed deductions for exhaustion and depreciation similar to those for 1929. The same deductions should be allowed for 1928 as we hold herein are allowable for 1929. We are unable to tell at this time what the effect will be on the alleged net loss and this may be settled under the recomputation that will need to be made.

Reviewed by the Board.

*Decision will be entered under Rule 50.*